### SCHOONMAKER-CONNERS CO., Inc., v. NEW YORK CENT. R. CO.

(District Court, E. D. New York. May 15, 1925.)

**1. Shipping ⬥⟹58(2)—Burden of proof to establish liability of charterer for injury to vessel is on owner, but terms of charter may raise presumption of charterer's negligence.**

Where a boat is injured while in possession of a charterer, the general burden of proof to establish his liability therefor rests on the owner; but if the charter, expressly or by implication, requires the charterer to use reasonable care, there is a presumption that the injury was due to his fault or negligence, and the burden is on him to overcome such presumption.

**2. Shipping ⬥⟹54—Charterer of a barge held liable for its injury due to negligence of tug in leaving it moored in such position that barges pounded together.**

Injury to a barge under charter requiring its return in as good condition as when received, less ordinary wear and tear, *held* due to

negligence of the charterer's tug in leaving it and another moored in a slip in such position that they pounded together in the swells.

**3. Shipping ⇐⇒49(3).**

A "catch time charter" is one under which compensation is paid for time boat is actually used.

Decree affirmed in 12 F.(2d) 317.

William F. Purdy, of New York City, for libelant.

Bigham, Englar & Jones, of New York City, for respondent.

INCH, District Judge. [1] This is an action for breach of charter. There is here involved the nature of the charter, and the liability, if any, of the respondent under it. The burden of showing that the respondent should pay libelant for the damages plainly sustained by the latter's barge while under the control of the respondent was upon libelant.

The contention of the respondent is therefore that this is not a case where, on the facts, this court can find that libelant's boat was hired under a form of contract whereby, it having been received in good order by respondent and returned by respondent in a damaged condition, a presumption of negligence, based on the mere receipt and such return, makes a prima facie case against respondent, and requiring respondent to explain, either by proof that the injury was sustained in a way showing no negligence, or from everything that respondent did, while such bailee of the boat, no conclusion that respondent neglected any duty can be drawn.

While, therefore, the burden of proving neglect of its boat by respondent, by a fair preponderance of evidence, rests from beginning to end upon libelant, yet where a boat is hired during a certain period of time, during which it has concededly been damaged, and the respondent by contract expressly or impliedly promised libelant to take reasonable care of the boat, it is the respondent, and not the libelant that should know, if anybody, how damage to it occurred, or, if the respondent honestly does not know, then at least the libelant is entitled to a reasonable explanation by respondent of what care it did take.

When, on the whole record, which must include a sufficient explanation, the presump-tion of fact of neglect, which is thus said to arise, is either rebutted, or the proof of alleged neglect stands even, the libelant cannot compel the respondent to pay. If the record, with the explanation, shows neglect, as a proximate cause of the damage, or if the respondent maintains silence as to what care it took, then the respondent should pay the damage.

[2] In this case the contract of hiring was oral. Mr. Conners, secretary and treasurer of the libelant, testified without contradiction that his company owns 58 barges like the barge in question; that during the past years he had chartered a great many of them to the New York Central Railroad Company; that on the 23d of November, 1923, his company and the railroad company was doing business under a uniform form of charter; and that on the day in question he chartered the barge Thompson to the railroad company by an agreement made on behalf of their respective principals, acting by himself and the charter master of the New York Central.

The conversation was substantially that this charter master called up and asked if the libelant had any barges. Mr. Conners replied that he had this Thompson. The charter master then said he would take it. Mr. Conners said "All right," and that the Thompson would be hired upon the same conditions and terms as that of all the other barges that had been previously hired. This was satisfactory to the charter master, who then asked for the location of the Thompson, and, Mr. Conners giving it, the charter master sent a tug and took charge of it. Some time thereafter it was returned in a damaged condition.

[3] The Thompson was apparently chartered under what is termed a "catch time" charter. This term relates simply to what compensation is to be paid. Ordinarily, when a boat is hired, the rent is so much a day. When "catch time" is followed, it is paid for when and as actually used, accounting being at some subsequent period. The custody, however, of the boat, commences at once, and the libelant, whether the boat is actually being used or not by respondent, ceases to have any control over it.

In this case, the accounting period was at end of each month. A captain went with the barge, and took all his instructions from the charterer while the boat was being worked. His pay during the day came from libelant; but, if he worked at night, the charterer paid him. The terms of the usual charter were that the New York Central

would pay $12 a day on this "catch time" basis.

The respondent promised to return the boat to libelant in the same condition, less ordinary wear and tear, as she was when received. There is no dispute that she was in ordinary good condition when received by respondent. The damages indicate that they were not such as could be classed as ordinary wear and tear. In my opinion libelant has proved a contract which requires the respondent to explain, or "carry on," in order to rebut a presumption of negligence arising from libelant's proof.

The respondent did not explain exactly how the damage occurred, but apparently contented itself with placing on the stand a number of witnesses, who testified to certain things done to the barge in the course of its use, and the trial was adjourned for several days in order to allow them to make an even more thorough presentation of how, within reasonable limits, they had used the barge, and where.

After carefully considering the entire case, it seems to me that, under the form of charter, and the acceptance of the barge in good condition, and its return badly damaged, and the presumption as to neglect to use due care arising, that respondent has failed to rebut this presumption. It entirely failed to do so, so far as showing how the accident happened. Its explanation as to its general care over the barge was far from being reasonably complete. There is a silence as to many things that may have been closely associated with the use of this barge by respondent.

I do not feel that respondent can complain of lack of time to provide a reasonable presentation of all these things, for not only did it have ample time to prepare, but, as I have said, it was allowed additional time during the trial for this express purpose, and its failure to show reasonably all the use of the barge, and circumstances surrounding that use, apparently within their control, is somewhat persuasive against respondent's position that it has no liability.

I think, therefore, that if this were all, libelant is entitled to a decree; but a careful reading of the testimony also indicates to me that a probable cause for the damage to the barge was a direct one. It was the negligent way in which the barge was left exposed in the slip on the night of April 14, 1924. This was the time when apparently this barge was damaged.

There is no proof that she was not in ordinary good condition prior to that time, and notice of such damage first reached libelant on the morning of April 15th. The damage had occurred during a time while the master of the barge was not on board. When he returned and in the morning he immediately reported the damage.

Examining the testimony as to what occurred that evening (April 14th), it appears that a New York Central tug No. 12 went into the slip where the Thompson was tied up to get a barge from inside the Thompson, which was the third boat out in a tier of four. The captain of No. 12 had the lines on the Thompson, and this barge outside of her, let go from the barge inside of the Thompson, and pushed both the Thompson and the other barge ahead a short distance. The captain of the No. 12 did not thus apparently follow the ordinary and usual safe method of breaking out a barge under such conditions, which would have been putting the lines of the Thompson to the barge which lay against the dock and pulling the desired barge out from the tier.

The result was that at least two-thirds of the Thompson was allowed to lap this other barge, there being only two lines from the bow of one of the barges, and none from the bow of the other, and this, with the slack on the lines, allowed the barges to swing in an angling position, and apparently to swing easily, and this would bring the side of the Thompson against the corner of the barge which she was lapping.

Taking into consideration the ordinary swells in the slip, and the reasonably to be expected movement of barges under such conditions, this negligent act on the part of the captain of the No. 12 seems to me to be not only a proximate cause of the damage shortly afterwards sustained by the Thompson, but the unscientific and careless method of thus mooring these barges together, was from the nature of the injuries a competent producing cause for the damage. It should be remembered that this change was made while the master of the Thompson was away.

There is a conflict of testimony as to the facts but it seems to me that the above is substantially what occurred. The damage that was sustained by the Thompson indicates just the sort of pounding that would be sustained by two barges in the position that the Thompson and the other barge was left, for when the Thompson was returned by respondent it was found that certain of her planks were broken on her starboard side aft, and other portions of the boat in that region were damaged and broken. It was

not the ordinary "rubbing" that barges must be prepared to withstand in the harbor.

I think, therefore, that libelant has, so far as could reasonably be expected under the circumstances, proved by a fair preponderance of evidence a specific negligent act on the part of the captain of the No. 12 tug of respondent, which could be the proximate cause for the damage sustained by the Thompson, and which, considering the probabilities, it is reasonable to believe was the cause.

While respondent disputes the existence of such accident at that time, or such cause of the injury, it seems to me, in weighing all the testimony and considering the record from its four corners, that libelant should recover even on this ground.

For the above reasons, therefore, I direct a decree in favor of libelant against the respondent.